# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No.  98-50793

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOSE EFRAIN CENICEROS,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

February 16, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON, District Judge.[*]

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

FALLON, District Judge:

This appeal follows the conviction of Jose Efrain Ceniceros for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  The issue addressed is whether the seizure of evidence by a roving border patrol agent

following a vehicle stop was supported by reasonable suspicion consistent with the Fourth Amendment. On appeal, Ceniceros contends that the district court erred in denying his motion to suppress. We affirm.

I.

On November 14, 1997, at the beginning of his shift, United States Border Patrol Agent Jeffrey Hampton and his partner, Agent Francisco Lopez,[1] learned of a "be on the lookout" advisory ("BOLO") issued by the Brewster County Sheriff's Office ("BCSO"). The BOLO indicated that a "90s model" white Chevrolet Lumina driven by a single Hispanic occupant would be traveling northbound from Lajitas, Texas, on Highway 118 that afternoon. The BOLO also provided that the vehicle would be carrying narcotics. The lookout did not provide license plate information, and Hampton did not know when or from what source the BCSA received the information.

At 3:35 p.m., the agents were heading southbound on Highway 118, approximately 25 miles south of Alpine, Texas, when they spotted a northbound white Chevrolet sedan. Hampton observed that the vehicle's sole occupant was a male of Hispanic origin. He did not recognize the vehicle or its driver as being local and noted their similarities to the BOLO. Believing the Chevrolet to be the subject of the BOLO, Hampton turned his patrol car around and began following the vehicle. The agent next called in the vehicle's license plate number and requested a registration check. The vehicle registration

returned valid and listed Cheryl Ewing of Dallas, Texas as the owner of the vehicle. Hampton observed that the vehicle was a four-door white Chevrolet Lumina. He backed away from the car for further observation. Highway 118 serves as an artery for traffic originating from Big Bend National Park. Hampton testified that most of the cars departing the park still have the receipt, or permit sticker, attached to their windshields. He also testified that park traffic was considered less likely to be involved in illegal activity. In this case, Hampton specifically noticed that the Lumina's windshield did not have a sticker evidencing park visitation. Hampton also observed that the Lumina's speed fluctuated between 55 and 70 miles per hour and that it drifted back and forth within its lane. Hampton believed that such action indicated that the driver was paying closer attention to the marked patrol car following him than to the road. During this time, Hampton also observed that the Lumina's shocks recovered slowly as it passed over bumps in the road, indicating that the vehicle was laden with cargo.

After following the Lumina for about ten miles, the agent activated his overhead lights and pulled the vehicle over at a closed border checkpoint station south of Alpine. Before approaching the driver, Hampton leaned on the back of the Lumina to test the shocks, which were slow to respond. The agent testified that the slow response was an "indication that something was in the trunk." The agent then approached the driver, later identified as Ceniceros, and asked about his citizenship. Ceniceros appeared nervous and slightly hesitant as he answered that he was a United States citizen. Ceniceros' nervous and delayed response caused Hampton to doubt its veracity. Hampton asked if

---

[1] Agent Lopez did not testify at the suppression hearing, and therefore plays no role in the analysis of this case. All references will be in the singular (e.g. "the agent," "his vehicle," etc.).

2

Ceniceros "had been down south for very long," to which Ceniceros replied "No." The agent then asked if he could look in the Lumina's trunk, and Ceniceros said "sure." Ceniceros activated the trunk latch from inside the vehicle, the trunk opened, and Hampton immediately smelled marijuana. Hampton found four flour sacks of marijuana collectively weighing 206 pounds in the Lumina's trunk. Ceniceros was placed under arrest and advised of his rights. He subsequently admitted to purchasing the marijuana in Mexico and smuggling it into the United States.

Ceniceros was indicted for possession with intent to distribute marijuana, a violation of 21 U.S.C. § 841(a)(1). He moved to suppress the fruits of the roving patrol stop, arguing that the agents did not possess the reasonable suspicion required to make an investigative detention of his vehicle. After a hearing, the district court denied Ceniceros' motion to suppress. The district court concluded that six factors collectively provided the requisite reasonable suspicion to stop Ceniceros: (1) the vehicle's proximity to the border; (2) the agent did not recognize the car as one belonging to a local resident; (3) the vehicle and its driver fit the description in the BOLO; (4) the vehicle was registered to a non-Hispanic female in Dallas but driven by a Hispanic male in the Big Bend area; (5) the reaction of the car to bumps indicated that it was heavily-laden; and, (6) the vehicle's drifting pattern within its lane. Ceniceros entered a conditional plea of guilty, expressly reserving the right to appeal the denial of his motion to suppress. The court accepted the plea and sentenced Ceniceros to 37 months of imprisonment and three years of supervised release. This appeal followed.

II.

A two-tiered standard of review applies to a district court's denial of a motion to suppress after an evidentiary hearing. *See United States v. Wilson*, 36 F.3d 1298, 1303 (5th Cir. 1994). A district court's findings of fact on a motion to suppress are reviewed for clear error only, while legal conclusions, including the ultimate conclusion as to whether there was reasonable suspicion for the stop, are reviewed de novo. *See United States v. Villalobos*, 161 F.3d 285, 288 (5th Cir. 1998). The evidence introduced at the suppression hearing is viewed in the light most favorable to the prevailing party, in this case the government. *See id.* at 288.

III.

Border Patrol agents on roving patrol may stop a vehicle when they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the particular vehicle is involved in illegal activity. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975); *Villalobos*, 161 F.3d at 288. Factors that may be considered include: (1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border; (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance and behavior. *See Brignoni-Ponce*, 422 U.S. at 884-85. Reasonable suspicion requires more than a mere unparticularized hunch, but considerably less than proof by a preponderance of the evidence. *See United States v. Gonzalez*, 190 F.3d 668, 671 (5th

3

Cir. 1999). No single factor is determinative; the totality of the particular circumstances known to the agents are examined when evaluating the reasonableness of a roving border patrol stop. *See United States v. Morales*, 191 F.3d 602, 604 (5th Cir. 1999), *petition for cert. filed* (Jan. 3, 2000) (No. 99-7729); *Villalobos*, 161 F.3d at 288.

The characteristics of the area in which the vehicle was encountered and the area's proximity to the border are important considerations in the reasonableness determination. *See Villalobos*, 161 F.3d at 288-89. Proximity to the border has been recognized by this court as a factor supporting reasonable suspicion, even when the vehicle is more than the benchmark fifty miles from the border. *See Gonzalez*, 190 F.3d at 672 (citing *Villalobos*, 161 F.3d at 289). Close proximity to the border is not required if other specific articulable facts support a finding of reasonable suspicion. *See United States v. Aldaco*, 168 F.3d 148, 150 (5th Cir. 1999). When encountered by Agent Hampton, the Lumina was approximately 70-80 miles from the border. The district court found that the Lumina's physical presence near the border, taken alone, did not justify a roving stop. However, the court did note the fact that the northbound vehicle was traveling from the direction of the Mexico-United States border was a legitimate factor when viewed in conjunction with the other factors considered by the agent. We agree.

Another *Brignoni-Ponce* factor weighed in favor of particularized suspicion of the vehicle and its driver in this case. The district court found that the BOLO received by agent Hampton was a legitimate factor to be considered when deciding whether to stop Ceniceros. A BOLO or anonymous tip may provide the reasonable suspicion required to justify an investigatory stop. *See Gonzalez*, 190 F.3d at 672. The white Chevrolet Lumina heading north on Highway 118 and driven solely by Ceniceros matched the description in the BOLO received by Hampton at the beginning of his shift that day and corroborated the lookout report. The agent and the district court were correct in considering this fact relevant. This court need not consider whether the lookout alone was sufficient, however, because Hampton also considered other factors in appraising whether there was reasonable suspicion.

Hampton testified that the Lumina's shocks were slow to respond from even subtle bumps in the road, and that this indicated that something was in the vehicle's trunk. The agent's observations served to further support his suspicion that the Lumina, which fit the BOLO's description, was engaged in drug trafficking. A vehicle's heavily-laden appearance may support a finding of reasonable suspicion and corroborate an informant's tip. *See United States v. Lopez-Gonzalez*, 916 F.2d 1011, 1014 (5th Cir. 1990); *see also Morales*, 191 F.3d at 605-06 (agent's observations that vehicle's "floating" response to bumps indicated a heavy load was a factor supporting reasonable suspicion). Hampton's consideration of these observations was appropriate.

The agent's previous experience is another relevant consideration in the reasonableness determination. Hampton had been in the Border Patrol for slightly more than one year. He testified that he had participated in ten drug seizures resulting from vehicle stops along Highways 118 and 385. While this level of experience does not

4

make Hampton a seasoned veteran, it does not diminish his judgment.  If anything, his familiarity with drug activity in the area bolsters his ability to make inferences from his other observations.

Likewise, the agent's observations that the driver of the vehicle seemed to be drifting within his lane due to his awareness of the trailing patrol car and the car's registration to a non-Hispanic Female in Dallas might not, without more, reasonably warrant suspicion of criminal activity.  But when viewed with the agent's other, more particularized suspicions about the vehicle and its driver, the more subtle observations add to the reasonableness of the agent's suspicion.  Viewed in the light most favorable to the government, the stop was justified.

The district court correctly concluded that under the totality of the circumstances, Agent Hampton had reasonable suspicion to stop Ceniceros.  The Lumina was traveling from the direction of the border, did not have a park sticker on its windshield and was not recognized by Hampton.  Most important, the vehicle, its driver, and the car's route fit the description of a BOLO Hampton received that day.  When he followed the car, he observed that the car drifted within its lane and appeared heavily-laden in the trunk.  All these factors provided articulable facts that indicated illegal activity might be afoot.  Under these facts, we cannot say that reasonable suspicion was lacking.

IV.

For the foregoing reasons, the judgment of conviction is AFFIRMED.