IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2008

Charles R. Fulbruge III
Clerk

No. 06-11381

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRIAN KEITH CASPER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Brian Casper appeals his conviction on the ground that his seizures and searches were unlawful. He also appeals his sentence. We find no error and affirm.

I.

In May 2005, Casper drove away from his residence in Fort Worth, which was under surveillance by a drug task force. Officers stopped him for a traffic violation and arrested him for driving with a suspended license and for outstanding arrest warrants. They searched the car and found methamphetamine, marihuana, scales and other drug paraphernalia, and a .40 caliber Beretta handgun. They transported Casper to the residence, where he gave written consent to a search of the house.

The search uncovered more methamphetamine and a sawed-off shotgun. After being read his Miranda warning, Casper admitted responsibility for the contraband found in the house and car.

In January 2006, two Dallas police officers responded to a complaint that an aggravated assault with a gun had occurred at a motel. The complaint was made via telephone, and the dispatcher relayed the information to the officers by radio and computer. The complainant alleged that his life had been threatened by a white male with a firearm who was driving a white Ford Ranger pickup with Illinois license plates.

On arriving at the motel, the officers witnessed Casper backing out of a parking spot in a white Ford Ranger pickup with Illinois plates. They turned on their lights, blocked Casper's path, drew their weapons, and ordered him to exit the vehicle. He complied, and the officers handcuffed him and asked whether he had any weapons. He told them of a handgun in the truck. The officer asked whether he had a permit for the gun. Casper admitted he did not, and the officers arrested him.

While the officer was retrieving the handgun from the truck, he observed what he believed to be drug paraphernalia. After arresting Casper, the officers inventoried the vehicle in preparation for impounding it. They seized the box of paraphernalia and found scales, torches, a Bunsen burner, glassware, metham-

phetamine, and a disassembled handgun. Casper admitted the contraband belonged to him.

## II.

### A.

Casper filed motions to suppress the evidence gathered from the searches. The court denied Casper a hearing on the May 2005 search but held one for the January 2006 search.

At the hearing, the government offered the testimony of the two arresting officers. Other than the details offered above, the officers testified that they were able to contact the complainant and bring him to the scene, where it was determined the complaint was a hoax. The officers also testified that they did not know the name of the complainant, though normally it would have been on the call sheet, which they did not produce at the hearing. The call sheet did have the complainant's phone number, so the police were able to contact him and bring him to the scene. The court concluded that it was not evident that the complainant had made an anonymous tip, meaning that the officers did not have to corroborate the tip, and thus the seizure of Casper was legal.

### B.

Casper was convicted of two counts of possessing drugs with intent to distribute, 21 U.S.C. § 841(a)(1), three counts of possession of a firearm by a felon, 18 U.S.C. § 922(g), and one count of possession of an unregistered firearm, 26 U.S.C. § 5861(d). He was acquitted of two counts of possession of a firearm in connection with a drug offense, 18 U.S.C. § 924(c).

The presentence report calculated the guideline range as 360 months to life imprisonment. That calculation included a two-level enhancement for possessing firearms in connection with the drug trafficking offenses. The court

adopted the calculation and sentenced Casper to 480 months' imprisonment.

## III.

Casper appeals the court's determination that the May 2005 and January 2006 seizures and searches were legal. We address each incident in turn.

## A.

With respect to the May 2005 seizure and search, Casper challenges the district court's denial, without a hearing, of his suppression motion.[1] The court denied the motion because it determined the uncontested facts established that the warrantless search was conducted incident to a legal custodial arrest. We review the determination not to hold a hearing on a motion to suppress for abuse of discretion.[2]

The government contends that we ought to review for plain error, because Casper did not object to the court's decision not to hold a hearing; Casper claims that is tantamount to requiring that he take an exception in contravention of Federal Rule of Criminal Procedure 51(a). We need not address that issue, because even under the less deferential abuse-of-discretion standard, the court did not err.

A defendant is entitled to an evidentiary hearing if he alleges sufficient facts that, if proven, would justify relief. See Powell, 354 F.3d at 370 (citing

---

[1] To preserve the matter for further review, Casper also avers that New York v. Belton, 453 U.S. 454, 460 (1981) (holding that the police may, as an incident of a lawful custodial arrest, conduct a warrantless search of the passenger compartment of an automobile), was incorrectly decided. Additionally, he claims the government failed to demonstrate its alternative justification for the warrantless search, that discovery of the contraband was inevitable because the automobile would have been inventoried before impoundment. We need not address that claim because we are bound by Belton, which is sufficient to render this a legal warrantless search.

[2] See United States v. Powell, 354 F.3d 362, 370 (5th Cir. 2003) (citing United States v. Harrelson, 705 F.2d 733, 737 (5th Cir. 1983)).

United States v. Mergist, 738 F.2d 645, 648 (5th Cir. 1984)). The movant generally bears the burden of production and persuasion, but "if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977).

The May 2005 search was conducted without a warrant, so the government had the burden of persuasion to justify the search. The government claimed that Casper made an illegal right turn, was stopped by a Fort Worth police officer, and was arrested for driving with a suspended license. The government avers that as a search incident to a legal, custodial arrest, the search did not violate the Fourth Amendment. The government did not offer any evidence of the events, and Casper did not stipulate to the government's account, but neither did Casper offer an alternative account or specifically contest that he was arrested before the search. His motion to suppress instead sought to cast doubt on the holding of Belton.

The court agreed with the government and concluded that the warrantless search was justified as a search incident to arrest under Belton, 453 U.S. at 460, and Chimel v. California, 395 U.S. 752, 762-63 (1969). Because we are bound by these precedents, the only question is whether the court abused its discretion by concluding that the government satisfied its burden of persuasion by merely alleging that Casper was legally arrested.

Because Casper never contested the government's assertion, let alone alleged facts that would, if proven, justify relief, see Powell, 354 F.3d at 370, the court did not abuse its discretion. Without Casper presenting an alternate account, the court could not have known that there were any disputed facts that required a hearing. Failure to stipulate to the government's version of the facts is insufficient to mandate a hearing. If a failure to stipulate were sufficient, an evidentiary hearing would be necessary every time a defendant alleged there

was no warrant, and hearings would be granted as a matter of course. The law does not require that.

## B.

When considering the denial of a motion to suppress, we review the "district court's factual findings for clear error and its ultimate conclusion as to the constitutionality of the law enforcement action de novo." United States v. Chavez-Villarreal, 3 F.3d 124, 126 (5th Cir. 1993). Casper contends that his January 2006 detention and the subsequent search of his vehicle, culminating in his arrest, were illegal because they were executed without a warrant and did not fall within any exception. Specifically, he asserts that the complaint that led the officers to the motel was the equivalent of an anonymous tip that the officers failed to corroborate and that the government has failed to demonstrate was, ex ante, reliable.

A person is seized when a show of authority is sufficient to convince a reasonable person that he is not free to leave. Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 215 (1984). An investigative stop by the police, though a seizure, is constitutionally permissible if the police have a reasonable suspicion, supported by articulable facts, that criminal activity is afoot. See Terry v. Ohio, 392 U.S. 1, 27 (1967); United States v. Martinez, 486 F.3d 855, 861 (5th Cir. 2007). Reasonable suspicion is a lower standard than is the probable cause required to make an arrest. United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000).

The Dallas police officers exhibited sufficient force for Casper to believe he was not free to leave; in fact, he was ordered out of his truck and was handcuffed immediately. As above, "if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." de la Fuente, 548 F.2d at 533.

Because there is no dispute that Casper's detention, arrest, and the search of his truck were done without a warrant, the government bears the burden of proving that the detention was justified by reasonable suspicion, placing it within the protection of Terry and its progeny.

The government asserts that the complaint telephoned to the Dallas police created reasonable suspicion to justify the investigative detention. The government offers as articulable facts that, on arriving at the location given in the complaint, the police found "Casper, who fit the description of the suspect, and was driving a vehicle which matched exactly the description of the suspect vehicle." That information alone is not sufficient to establish reasonable suspicion; something needs to be known about the informant. See Florida v. J.L., 529 U.S. 266, 272 (2000).

> An informant's tip can provide reasonable suspicion, depending on the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

Martinez, 486 F.3d at 861 (quotation marks and citation omitted). Where the tip is anonymous, the credibility and reliability of the informant cannot be determined, and the government must establish reasonable suspicion based on some or all of the other factors.[3]

The government agrees that if the source of the information were anonymous, it would be more difficult to establish the veracity of the tip and to conclude the tip provided reasonable suspicion. The government contends, however, that the complainant was not anonymous, but rather a citizen reporting a crime.

---

[3] See J.L., 529 U.S. at 270 (noting that corroboration can establish that an anonymous tips exhibits sufficient indicia of reliability to provide reasonable suspicion); Martinez, 486 F.3d at 862.

We have agreed with other circuits that a citizen reporting a crime is more reliable, because such citizens are exposed to criminal liability for false complaints. United States v. Basey, 816 F.2d 980, 988-89 (5th Cir. 1987). Reliability is the central concern. Thus, in Basey the tipster was reliable because the deputies conducting the Terry stop knew the citizen informant. Id. at 988. In contrast, in Martinez, 486 F.3d at 861-62, where the government "never introduced any evidence about the informant whatsoever and made no effort to illustrate his or her reliability in the district court," the tip was the "functional equivalent of an anonymous tip. To characterize it as anything else would be to assume the very credibility and reliability that the government has the burden of proving."

In the instant case, the government must establish the reliability of the informant, base its reasonable suspicion on other factors named in Martinez, or both. The government offers that the informant was not anonymous because he could be identified by his phone number and held accountable for a false tip if that became necessary.[4] We agree that, where instant caller identification allows the police to trace the identity of an anonymous telephone informant, the ready identifiability of the caller increases the reliability of such tips. See J.L., 529 U.S. at 276 (Kennedy, J., concurring).[5] Additionally, an informant who explains the basis for his knowledge increases his reliability, see id. at 271, especially if he is a person relating the details of a crime he has personally suffered, see Adams v. Williams, 407 U.S. 143, 147 (1972).

---

[4] Ultimately, the tip was false and the informant was identified. That knowledge, however, is unhelpful for determining whether the officers had reasonable suspicion ex ante.

[5] Casper counters that, in assessing the reliability of an informant, the important question is whether the informant knows he has opened himself up to liability for false tips. Thus, if the tipster thinks he will remain anonymous, even though the police will capture his telephone number, he is less reliable, because he does not think he can be held accountable for a false accusation. Instant caller identification is so pervasive today that no one fails to grasp that the police, who have long been able to trace a call, are able to capture the number and initiate a trace.

Based on the captured telephone number and the victim status of the caller, the government has established some reliability and credibility for the instant informer, thereby creating reasonable suspicion. The specificity of the information in the tip and the fact that the tip addressed very recent events also indicate reliability and create reasonable suspicion. See Martinez, 486 F.3d at 861. In light of these factors, the officers had reasonable suspicion to justify an investigative stop of Casper, which permitted the protective search of Casper's truck that resulted in the probable cause necessary to justify his arrest, rendering the subsequent search of the vehicle permissible as incident to that arrest or as an inventory.

## IV.

Casper alleges that his sentence is unreasonable because his acquittal on both counts of possessing a firearm in connection with a drug offense, § 924(c), increased the maximum sentence for which he was eligible under the sentencing guidelines. Though at first glance this appears to be the typical acquitted-conduct argument foreclosed by United States v. Watts,[6] it is not.

Casper concedes that the court's consideration of his acquitted conduct in calculating his guideline range is permitted under Watts. Instead, he objects to the 480-month sentence, which he contends is less than the maximum sentence resulting from his acquittal but greater than the maximum had he been convicted of the same conduct. According to Casper, it is one thing for acquitted conduct to result in the same sentence as the convicted conduct; it is something else for the acquitted person to receive a greater sentence than he would have received had he been convicted of the same conduct. This amounts to punishment

---

[6] 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.").

for being acquitted, for putting the government to its burden. Casper urges that this particular application of the guidelines produced an unreasonable sentence in violation of United States v. Booker, 543 U.S. 220, 260 (2005).

After Booker, we typically review the reasonableness of a sentence, whether inside or outside the guideline range, for abuse of discretion. Gall v. United States, 128 S. Ct. 586, 594 (2007). Where the defendant has failed to object on specific grounds to the reasonableness of his sentence, thereby denying the court the opportunity to identify and correct any errors, we review for plain error. United States v. Peltier, 505 F.3d 389, 391-92 (5th Cir. 2007), cert. denied, 2008 U.S. LEXIS 5228 (June 23, 2008) (No. 07-8978). Casper never argued to the district court that his sentence was unreasonable because it fell outside the 384- to 465-month range that arguably would have applied had he been convicted of one § 924(c) count, nor did he object to the presentence report's 360 months-to-life range.

Thus, we review Casper's 480-month sentence for plain error. "We may correct the sentencing determination only if (1) there is error (and in light of Booker, an 'unreasonable' sentence equates to a finding of error); (2) it is plain; and (3) it affects substantial rights." Id. at 392 (citing United States v. Olano, 507 U.S. 725, 732 (1993)). Additionally, "the decision to correct the forfeited error [is] within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted) (second alteration in the original).

To determine whether the court erred, we must determine whether the sentence is reasonable. Id. The sentence enjoys a presumption of reasonableness, because it is within the properly calculated range, 360 months to life. See United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005); see also Gall, 128 S. Ct. at 591. A presumption can be overcome, and if Casper were correct that his

sentence was greater because of his acquittal than it would have been had he been convicted of one § 924(c) charge, the presumption would likely be overcome. We need not reach that question, however, because any error was not plain.

Casper claims that had he been convicted of a single § 924(c) charge,[7] his sentencing range would have been lower because U.S.S.G. § 2K2.4 commentary note 4, denying the application of any specific offense characteristics for possession of a firearm where the defendant was convicted of a separate firearm offense such as § 924(c), would not have applied. Thus, he would have received only the sixty-month statutory minimum under § 924(c), to be served consecutively, and not the two-level enhancement for the specific offense characteristic that made life imprisonment the high-end of his sentencing range. It is also plausible, however, to read commentary note 4 as suggesting that, had Casper been convicted of only one § 924(c) charge, he would have received the sixty-month statutory minimum and the two-level enhancement.[8]

"Plain errors are 'obvious,' 'clear,' or 'so conspicuous that the trial judge and prosecutor were derelict in countenancing [them], even absent the defendant's timely assistance in detecting [them].'" United States v. Puckett, 505 F.3d 377, 384 (5th Cir. 2007) (citation omitted), petition for cert. filed (Mar. 3, 2008) (No. 07-9712). The sentence was within the properly calculated guideline range, and there is a colorable argument against Casper's claim that his sentence is higher than the maximum had he been convicted of a single § 924(c) charge; without an objection and Casper's instant argument, there is no reason to expect

---

[7] Had Casper been convicted of both § 924(c) charges, he would have had at least a 25-year mandatory minimum sentence to be served consecutively, extending far beyond the 480-month sentence he received. See § 924(c)(1)(C)(i); U.S.S.G. § 2K2.4(b).

[8] "[I]f a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction." § 2K2.4 cmt. n.4 (2005).

the court or prosecutor should have recognized this as error. Even assuming error, however, it was not plain.

In summary, the denial of the motions to suppress is AFFIRMED. The sentence is likewise AFFIRMED.

DENNIS, Circuit Judge, specially concurring and concurring in the judgment:

1.

I fully concur in the majority's affirmance of the defendant's conviction for the possession charges related to the May 5, 2005 warrantless search. The issue is controlled by New York v. Belton, 453 U.S. 454 (1981).[1] I concur specially because I do not subscribe to the majority's reliance upon Justice Kennedy's concurring opinion in Florida v. J.L., 529 U.S. 266, 276 (2000) (Kennedy, J., concurring) as justification for characterizing the informant's anonymous phone call that led to the January 6, 2006 warrantless search as a readily traceable and therefore reliable tip.

Citing Justice Kennedy's concurring opinion, the majority agrees with the government that the informant's tip was not anonymous simply because the police department's caller identification technology could determine that the phone used by the informant was located in a local motel. That assumes too much in this case in which the anonymous call to police came from a phone at an undisclosed location in the motel. Without additional evidence arguably linking the phone to a particular person, police knowledge that the call originated from the motel does not ex ante increase the reliability of the informant's tip. Equally unwarranted is the assumption in the majority opinion's footnote 5 that anonymous calls are now generally reliable because of the pervasiveness of caller identification technology. This assumption has not been demonstrated to be well founded, and if followed would drastically and unrealistically narrow the scope of anonymous tips that be should considered unreliable unless further corroborated.

---

[1] Relevant to this case, the Supreme Court has recently granted cert on this issue: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?" in Arizona v. Gant, 128 S.Ct. 1443 (Mem), (2008).

Instead of adopting any bright line rule, courts must examine the factual circumstances surrounding each anonymous phone tip to determine whether the police reasonably could have considered it to be sufficiently reliable information as a basis for their actions. See United States v. Villalobos, 161 F.3d 285, 288 (5th Cir. 1998) ("[S]ince 'reasonable suspicion' is a fact-intensive test, each case must be examined from the totality of the circumstances known to the agent, and the agent's experience in evaluating such circumstances.") (internal quotation omitted). Reasonable police conduct requires that they examine the surrounding factual circumstances of an anonymous call to determine if there is a sufficient factual basis for the police to know ex ante that a phone number, combined with other facts given in the call, is sufficient information for the police to locate the caller and hold him accountable for any false information provided. See United States v. Hopes, 286 F.3d 788, 789-90 (5th Cir. 2002) (noting the importance of "accountability" in determining whether a tip is anonymous). Justice Kennedy in his concurring opinion in J.L. did not endorse the broad assumption of anonymous caller reliability the majority advocates; instead, he suggests that caller identification technology may bolster the reliability of anonymous tips if there are facts to suggest the police are able to use the phone number to find the informant. See J.L., 529 U.S. at 276 (Kennedy, J., concurring) ("[T]the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips."). The government does not provide any evidence in the record that the police knew facts ex ante that the phone number would ultimately lead them to the anonymous informant.

While I would find the call anonymous, other important fact-specific indices of reliability are found in this case. First, the informant's call did not deal with general criminality but concerned a serious and specific

contemporaneous emergency event. See United States v. Terry-Crespo, 356 F.3d 1170, 1176 (9th Cir. 2004).  The victim was allegedly just threatened with his life and a dangerous suspect was still in the victim's vicinity.  Second, as noted by the majority, the informant was the alleged victim, which renders a tip more reliable.  This is a very close case, but considering the specific facts in this case, I ultimately concur in the judgment that the police, in the totality of the circumstances, had sufficient reasonable suspicion to conduct the search.

2.

I also concur in the majority's affirmance of the district court's sentence under the plain error standard of review.  However, I am greatly troubled that a district court can use conduct acquitted by a jury for a sentence enhancement that significantly increases a sentence beyond that the defendant would have obtained had he been convicted by the jury for that same conduct.  Nevertheless, despite strong reasons against the use of acquitted conduct in this way, see, e.g., United States v. Ibanga, 454 F. Supp.2d 532 (E.D. Va. 2006), vacated, United States v. Ibanga, 2008 WL 895660, at *3 (4th Cir. Apr. 1., 2008) (unpublished), the majority correctly concludes that the district court did not plainly err.

For these reasons, I specially concur and concur in the judgment.