EDITH BROWN CLEMENT, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s reversal of the denial of Benavides’s motion to suppress, because I believe that the “totality of the circumstances” provided reasonable suspicion to stop Benavides’s vehicle.
The majority’s holding that the stop was unconstitutional relies on Florida v. J.L., in which an anonymous caller reported to the police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. 529 U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The police arrived at the bus stop, identified a black male with a plaid shirt, frisked him, and seized a gun from his pocket. Id. The defendant was 15 years-old at the time of his arrest, and he was charged under state law with carrying a concealed firearm without a license and possessing a firearm while under the age of eighteen. Id. at 269, 120 S.Ct. 1375. The Supreme Court held that the anonymous tip could not support a finding of reasonable suspicion in that case, because it was reliable only “in its tendency to identify a determinate person,” but not “in its assertion of illegality.” Id. at 272, 120 S.Ct. 1375.
The tip received by the police in J.L. was entirely bare of any element linking the identified individual with criminal activity. The only allegation raised by the J.L. tipster was that the individual was in possession of a gun, an act that is not inherently illegal. This court has distinguished reasonable suspicion of gun possession, which, by itself, cannot justify an investigative stop, from “reasonable suspicion concern[ing] the possession of narcotics, an act that is per se illegal.” United States v. Roch, 5 F.3d 894, 899 (5th Cir. 1993). In this case, even though the tipster did not explicitly refer to the presence
*609 of narcotics in the crates, the context of the call clearly indicated that he was reporting drug-related activity. At oral argument, the parties were unable to explain how the call got to the desk of Joe Benavides, a member of a police task force specializing in narcotics law enforcement. Nevertheless, either the call was transferred to the Laredo Multinarcotics task force by some other police entity, such as a 9-1-1 operator — in which case the tipster necessarily must have indicated during this initial conversation that he was suspecting narcotics activity; or the tipster directly called the Laredo Multinarcotics task force — in which case, Joe Benavides could not only legitimately conclude that the tip concerned nareotics-related conduct, but also assume that the tipster had some experience in reporting this type of activity. See United States v. Hernandez, 477 F.3d 210, 215 (5th Cir.2007) (noting that “[t]he tipster call was a rifle-shot to the nearest checkpoint facility, out of which the roving patrols were based, as opposed to any other office in the Laredo Sector, suggesting familiarity with the Border Patrol and knowledge and experience with reporting illegal activity”). In either case, Joe Benavides was obviously aware that the tipster was reporting drug-trafficking activity and had no reason to delay his verifying the information with further questioning.[1] The majority opinion fails to consider the nature of the information reported and the context in which the call was received, which distinguish this case from J.L. In summarily concluding that the tip contained only “identifying information” insufficient to provide reasonable suspicion for the stop under J.L., it ignores the spirit of the “totality of the circumstances” approach, which requires this court to “eschew[ ] bright-line rules, instead emphasizing the fact-specific nature of the ... inquiry.” United States v. Brigham,, 382 F.3d 500, 507 (5th Cir.2004) (internal quotation omitted).
“Instead of adopting any bright line rule, courts must examine the factual circumstances surrounding each anonymous phone tip to determine whether the police reasonably could have considered it to be sufficiently reliable information as a basis for them actions.” United States v. Casper, 536 F.3d 409, 417 (5th Cir.2008) (Dennis, J., concurring). The “factual circumstances” typically considered by this court — and which the majority fails to examine^ — include
the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.
United States v. Gonzalez, 190 F.3d 668, 672 (5th Cir.1999). Where the tip was anonymous, as here, the police have no means of assessing the “credibility and i’eliability of the informant.” Id. Nevertheless, there are situations in which an anonymous tip exhibits “sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop,” Alabama v. White, 496 U.S. 325, 327,110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), particularly where, as here, all of the other Gonzalez factors are satisfied. See Casper, 536 F.3d at 414 (noting that “[wjhere the tip is anonymous, the credibility and reliability of the informant cannot be determined, and the government must establish reasonable suspicion based on some or all of the *610 other factors”). The information provided by the tipster was very specific, and included a detailed description of the pick-up truck and its license plate number; every element of that description was validated by Joe Benavides before the vehicle was stopped. In addition, the tipster was reporting ongoing events as he was observing them, which gives additional credence to the tip. See United States v. Bolden, 508 F.3d 204, 206 n. 2 (5th Cir.2007) (holding that reasonable suspicion to stop individuals involved in a shooting was warranted when “the tip was specific as to location of the shooting and dealt with recent or even ongoing activity, and the officers could verify the information, because they personally heard the gunshots” (internal quotations omitted)). In light of these factors, I believe that the tip, though anonymous, presented sufficient “indicia of reliability” to form the basis for the stop of Benavides’s vehicle.
Finally, the majority notes, but fails to take into account, two other elements that bolster the police’s reasonable suspicion. First, Joe Benavides testified that the activity reported struck him as suspicious because the truck was allegedly being loaded at a location that is not in a warehouse area. The majority should have given this testimony of a police officer who specialized in narcotics work the “due weight” it is entitled to in light of his “experience and expertise.” Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Second, the district court, in denying Benavides’s motion to suppress, considered the fact that the activities reported were taking place in Laredo, Texas, a city located near the Mexican border — -presumably, an area where drug-trafficking is frequent. The majority notes this observation in a footnote without explaining how it affects its analysis, even though it is well-established that “[t]he characteristics of the area in which the vehicle was encountered and the area’s proximity to the border are important considerations in the reasonableness determination.” Hernandez, 477 F.3d at 213; see also United States v. Mendenhall, 446 U.S. 544, 563-64, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (recognizing that “[l]aw enforcement officers may rely on the characteristics of the area” to form their “reasonable suspicion” of criminal activity (internal quotation omitted)). Though these elements “by themselves may appear innocent,” they are combined here with a highly specific tip corroborated by the police; this falls squarely within the ambit of situations in which all factors considered “in the aggregate rise to the level of reasonable suspicion.” United States v. Ibarra-Sanchez, 199 F.3d 753, 759 (5th Cir.1999).
In light of the foregoing, I disagree with the majority’s holding that the investigative stop of Benavides’s vehicle was a violation of the Fourth Amendment. Therefore, the search of the truck bed, which uncovered the narcotics evidence at issue, was not tainted by a prior unconstitutional stop. The Fourth Amendment permits police officers who have lawfully detained a vehicle to search it without first obtaining a warrant so long as they “have either the consent of the owner to conduct the search or probable cause to believe that the vehicle contains contraband or other evidence of a crime.” United States v. Mendoza-Gonzalez, 318 F.3d 663, 666 (5th Cir.2003). Shortly after Benavides was pulled over, Officer San Miguel conducted a “canine sniff’ by a narcotics-detection dog around the exterior of a vehicle. This “free-air search” does not constitute a “search or seizure” under the Fourth Amendment and can be conducted without consent. United States v. Duffaut, 314 F.3d 203, 208 (5th Cir.2002). And “[ojnce a dog has alerted to the presence of narcotics, agents have sufficient probable cause to conduct a search of the vehicle.” Id. Therefore, after the dog alerted to the crates loaded in the truck bed, the police had probable *611 cause to search the truck and open the crates, and Benavides’s consent was not required.[2]
For these reasons, I would affirm the district court’s denial of Benavides’s motion to suppress.

. In fact, had Joe Benavides prolonged the call, he may not have been able to follow up on the information reported, because the pick-up truck had left the location identified by the tipster and was spotted by Joe Benavides while en route to that location.

. Because the search of Benavides’s vehicle was justified by probable cause, I do not reach the issue of whether Benavides's consent to the search was voluntary. Nevertheless, it is worth noting that Benavides's argument that his consent was involuntarily given is inconsistent with his testimony at the suppression hearing, where he stated that he had enough education to read and understand the consent form, that he in fact understood the form, and that he knew he had the right to refuse to sign it. See United States v. Jones, 234 F.3d 234, 242 (5th Cir.2000) (noting the six factors typically examined by this court in assessing voluntariness of consent: “1) the voluntariness of the defendant’s custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant’s cooperation with the police; 4) the defendant’s awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found”).