**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jo Ann HARRELSON,
Defendant-Appellant.**

No. 81–1602.

United States Court of Appeals,
Fifth Circuit.

May 6, 1983.

Fred Time (Ct.-Apptd.), Edgar Adams Mason, Dallas, Tex., for defendant-appellant.

LeRoy M. Jahn, John C. Emerson, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

* Circuit Judge of the Eleventh Circuit, sitting by designation.

POLITZ, Circuit Judge:

Convicted on one count of making a false and fictitious statement in connection with the acquisition of a firearm, contrary to 18 U.S.C. §§ 922(a)(6) and 924(a),[1] Jo Ann Harrelson appeals, contending that: (1) the superseding indictment erroneously included a specific intent element; (2) the trial court erred in declining to instruct the jury on specific intent; and (3) the court erred in refusing to reopen a pretrial hearing on defendant's motion to suppress based on an alleged sixth amendment violation. Finding no error, we affirm.

## Factual Background

United States District Judge John H. Wood, Jr., was shot to death in San Antonio, Texas, on May 29, 1979. The investigation soon focused on Jamiel A. (Jimmy) Chagra, his wife Elizabeth, Charles Harrelson, his wife Jo Ann, and El Paso attorney Joseph S. Chagra, brother of Jamiel Chagra. Jo Ann Harrelson was summoned before a federal grand jury in the Western District of Texas investigating her husband's complicity in the murder. After invoking the fifth amendment and refusing to testify, she was granted use immunity and thereafter testified on several occasions during the summer of 1981.

On September 1, 1981, a federal grand jury in the Northern District of Texas indicted Jo Ann Harrelson on a charge of knowingly making a false and fictitious statement in connection with the purchase of a Weatherby Model Mark V, .240 calibre rifle, from the Hunter Bradlee Company, a Dallas sporting goods store. Defendant was implicated in Judge Wood's assassination through testimony of Special Agent Ronald Iden of the Federal Bureau of Investigation. Iden informed the grand jury that, pursuant to court approval, a concealed microphone had been installed in the waiting room of the federal penitentiary at Leavenworth, Kansas, and conversations between Jamiel and Joseph Chagra had been intercepted. In one of these conversations, intercepted on January 20, 1981, Joseph told Jamiel that Charles Harrelson identified the defendant as the person who acquired the rifle used in the murder. Joseph Chagra also said he possessed a map disclosing the location of the hidden weapon.

Agent Iden further testified that a search of Joseph Chagra's El Paso residence, pursuant to a search warrant, uncovered the map the Chagras had discussed. Although a search of the Forney, Texas area depicted on the map proved unsuccessful, two local residents, alerted by publicity surrounding the search, produced a rifle stock they had found. Iden testified that through this physical evidence the authorities were able to trace the murder weapon to defendant.

After examining the grand jury transcripts made available by the government, defendant moved to suppress incriminating evidence derived from the intercepted conversation between her alleged attorney, Joseph Chagra, and his brother. Defendant filed a companion motion to reopen an evidentiary hearing on a prior dismissal motion,[2] asserting that the electronic surveil-

---

1. Section 922(a)(6) renders it unlawful:

   for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.
   Section 924(a) provides in pertinent part that any person who violates any provision of the federal firearms laws, 18 U.S.C. §§ 921 et seq., "shall be fined not more than $5,000, or imprisoned not more than five years, or both. . . ."

2. In an effort to discover whether the government had improperly used her immunized testimony to procure the indictment, defendant sought disclosure of the grand jury transcripts. She moved for a dismissal on this ground. At the ensuing hearing the government produced the transcripts and offered evidence and exhibits to show that the indictment was based on evidence independent of the immunized testimony. The trial court denied the motion to dismiss, granting leave to defendant to seek a reopening if circumstances so warranted.

lance infringed her rights under the fourth and sixth amendments. After reviewing the motions, briefs and pleadings on file, the trial court denied the motion to suppress without conducting a hearing.

Shortly thereafter the grand jury returned a superseding indictment, which defendant challenged as impermissibly vague for allegedly failing to provide sufficient notice of the offense charged.[3] Defendant also argued that the "intended and likely to deceive" language of the indictment superimposed an additional mental element on § 922(a)(6). Defendant's challenge was rejected; the case proceeded to trial before a jury. The prosecutor offered evidence that defendant had signed the federal form required for purchase of the rifle, her fingerprints were found on the paper, and the information as to her name, age, and date of birth were falsified. The jury returned a verdict of guilty.

### Specific Intent to Deceive

Harrelson assigns error to the district court's refusal to dismiss the superseding indictment, and to instruct the jury in accordance with her proposed charge on specific intent. Focusing first on the variations of the statutory phrase "intended or likely to deceive" found in the superseding indictment and charge,[4] defendant contends that this language either injects a specific intent element in § 922(a)(6) which must be proved, or erroneously incorporates such an element. Neither contention has merit.

■ To establish a violation of § 922(a)(6), the government must show that the defendant knowingly made a false statement which was intended to deceive or likely to deceive the firearms dealer. *United States v. Cochran,* 546 F.2d 27 (5th Cir. 1977). Specific intent is not an essential element of a § 922(a)(6) offense; the government need only prove that the defendant imparted "false information, with the general intention of deceiving or likely to deceive" the dealer. *Id.* at 30.

■ But for the substitution of "and" for "or," the relevant portion of the superseding indictment tracks the statute. Use of the conjunctive form in the superseding indictment, through inadvertence or otherwise, does not change the essential elements of the offense or add to the government's burden of proof. "It is well-established in this Circuit that a disjunctive statute may be pleaded conjunctively and proved disjunctively." *United States v. Haymes,* 610 F.2d 309, 310 (5th Cir.1980). The superseding indictment fairly apprised defendant of the charge against her, protected her against further prosecution for the same offense, and accurately set forth the governing statute. Accordingly, the trial court properly denied the motion to dismiss. *See United States v. Greene,* 697 F.2d 1229 (5th Cir.1983); *United States v. Campbell,* 685 F.2d 131 (5th Cir.1982).

■ The charge to the jury likewise passes constitutional muster. A trial judge is afforded broad discretion in tailoring jury instructions, *United States v. Enstam,* 622 F.2d 857 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1974, 68 L.Ed.2d 294 (1981), and the failure to adopt a party's

---

**3.** The superseding indictment charged:

That on or about the 17th day of May, 1979, in the Dallas Division, Northern District of Texas, JO ANN HARRELSON, in connection with the acquisition of a firearm, that is, a Weatherby Model Mark V, .240 caliber rifle, serial number H112499, from the Hunter Bradlee Company, a federally licensed firearms dealer, knowingly did make a false and fictitious written statement to said firearms dealer which was intended and likely to deceive said dealer with respect to a fact material to the lawfulness of the sale of said firearm to JO ANN HARRELSON under the provisions of Chapter 44 of Title 18, United

States Code, in that on ATF Form 4473, JO ANN HARRELSON represented that her name was Fay L. King and that her residence address was 2243 Lyndon, Greenville, Texas, whereas in truth and fact, as JO ANN HARRELSON then well knew, her name was not Fay L. King and her residence address was not 2243 Lyndon, Greenville, Texas, all in violation of Sections 922(a)(6) and 924(a) of Title 18, United States Code.

**4.** The statute prescribes: "intended or likely to deceive." The indictment alleges: "intended and likely to deceive," and the charge instructs: "intended or likely to deceive."

proposal will warrant reversal only where the charge considered as a whole does not correctly reflect the issues and law. *United States v. Fischel,* 686 F.2d 1082 (5th Cir. 1982). A criminal defendant, while entitled to an instruction on her theory of the case, has no right to particular wording, or to a charge which is incorrect, confusing, or misleading. *See id.; United States v. Thetford,* 676 F.2d 170 (5th Cir.1981); *United States v. L'Hoste,* 609 F.2d 796 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). Viewing the totality of the instructions given, we find no basis for reversible error. The charge accurately framed the legal issues and correctly presented the substantive law.[5] Defendant's insistence on a specific intent charge was properly declined.

### Reopening of Hearing

In her final assignment of error, Harrelson challenges the trial court's refusal to conduct an evidentiary hearing on her claim that electronic monitoring of a portion of the conversation between the Chagra brothers on January 20, 1981, violated her attorney-client privilege, here subsumed within her sixth amendment right to counsel.

■■■ Although defendant's motions to suppress and for a hearing do not advert to Fed.R.Crim.P. 41(e), we are convinced that the standards contained in that rule apply. *United States v. Migely,* 596 F.2d 511 (1st Cir.), *cert. denied,* 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979). Under Rule 41(e), an evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact. *See In re Searches and Seizures Conducted, Etc.,* 665 F.2d 775 (7th Cir.1981). Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief. *United States v. Smith,* 546 F.2d 1275 (5th Cir.1977); *United States v. Poe,* 462 F.2d 195 (5th Cir.1972), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973). Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be " 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.' " *United States v. Poe,* 462 F.2d at 197 (*quoting from Cohen v. United States,* 378 F.2d 751, 761 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967)). *Accord, United States v. Smith; United States v. Losing,* 539 F.2d 1174 (8th Cir.1976), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1978). General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice. *See United States v. Migely; United States v. Thornton,* 454 F.2d 957 (D.C.Cir.1971); 3 C. Wright, Federal Practice and Procedure: Criminal 2d, § 675 (1982).

Inherent in these flexible guidelines is a judicial recognition that "the determination of whether a hearing is required [on a motion to suppress] is necessarily dependent upon the particular facts which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard." *United States v. Losing,* 539 F.2d at 1178. Detailed review of the filings by defendant in support of her suppression motion persuades us that the district court did not abuse its discretion by declining to hold a hearing.

Harrelson argues that she was represented by Joseph Chagra when the government intercepted his comment that Charles Harrelson had identified defendant as the person who procured the rifle. Other than two oblique references in defendant's brief,[6]

---

**5.** The charge required the government to prove the defendant "knowingly made a false or fictitious written statement"; defined "knowingly" as "voluntarily and intentionally," as opposed to "because of mistake, or accident, or other innocent reason"; and stated, "The prosecution must prove beyond a reasonable doubt that the defendant knew the statement was false or

fictitious when made" and that a "statement is 'false or fictitious' if it was untrue when made, and was then known to be untrue by the person making it."

**6.** At one point in the brief accompanying her suppression motion, defendant avers that "[d]isclosures between and among persons

there is no indication that defendant, Jamiel Chagra and Charles Harrelson were joint clients of Joseph Chagra, either when Charles Harrelson made the incriminating statement or when it was repeated in the discussions between the Chagra brothers. Defendant did not allege facts from which a joint or common defense might be inferred. She merely suggested that when given the opportunity she would establish the existence of a common privilege and governmental intrusion upon that privilege.

 There being no factual allegations of the existence of an attorney-client relationship between Joseph Chagra and the others involved, there was no ground for convening a hearing. Hearings on motions to suppress are not discovery proceedings, but are instead designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought. The filings before the trial judge when he declined to grant a hearing support his discretionary call. We will not disturb it.

Finally, defendant contends that any factual deficiency in her motion filings was remedied by the affidavit of Joseph Chagra, filed four days after the jury returned its verdict of guilty. Failure to move pre-trial for suppression, or to assert a particular ground in the suppression motion, operates as a waiver unless the district court grants relief for good cause shown. Fed.R.Crim.P. 12(b)(3) and 12(f). *See United States v. Gresham,* 585 F.2d 103 (5th Cir.1978); *United States v. Kaplan,* 554 F.2d 958 (9th Cir.1977), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1978); *United States v. Schwartz,* 535 F.2d 160 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977). Evidence offered to substantiate claims urged in a suppression motion must be presented within the time limitations of Fed.R.Crim.P. 12(b)(3).

Construing defendant's request for leave to file Joseph Chagra's affidavit as a motion for relief under Rule 12(f), we conclude that the district court did not abuse its discretion by declining to reconsider its pre-trial denial of defendant's suppression motion. No explanation or excuse was offered for the untimely filing. There was no showing that the affiant or the information was not available. The district court correctly refused to convene an evidentiary hearing on the basis of Joseph Chagra's belated affidavit.

The conviction is AFFIRMED.

who are subject to possible indictment in connection with the same transaction are also protected by the privilege, to the extent that they concern common issues and are intended to facilitate representation and possible subsequent proceedings." Thereafter, defendant states that she was "ready and able to offer

evidence that [would] establish that at the time the surveillance took place, Joseph Chagra, while acting in the capacity of her attorney, was actively gathering facts and conducting interviews with persons subject to possible indictment in connection with the same transaction."