# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-10963

———————

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Leopoldo Antonio Gonzalez,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:23-CR-3-1

———————————————————————

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Leopoldo Antonio Gonzalez ("Gonzalez") pleaded guilty to possession with the intent to distribute narcotics but reserved his right to appeal the district court's denial of his motion to suppress. We AFFIRM.

## I

On June 14, 2019, Gonzalez was driving through Texas on U.S. 287 when State Trooper Daniel Manney ("the trooper") observed him traveling

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-10963

91 miles per hour in a 75-miles-per-hour zone and stopped him for speeding. The trooper's body and in-car cameras captured the entire encounter.

The trooper approached the passenger side of Gonzalez's vehicle, informed him that he had been stopped for speeding, asked about his travel plans, and requested his driver's license and proof of insurance. Gonzalez provided his license and registration, explaining that he was on his way to a family reunion in Alabama and that his car was insured, but he did not have proof of insurance with him. Two minutes and twenty seconds into the stop, the trooper asked Gonzalez to accompany him in his patrol car to conduct an insurance check. Once seated in the patrol car, Gonzalez commented that it was his first time in the front of a police car. The trooper noted that Gonzalez appeared unnaturally nervous, as his hands and arms were shaking.

Three minutes after the initial stop, the trooper began running various computer checks as he continued to ask Gonzalez about his travel plans. Gonzalez told the trooper that he was not sure exactly where in Alabama the reunion would be held, but once there, he would "meet up" with his family and they would "go to a lake or something . . .." He elaborated that it was his mother's family that would be attending the reunion, that he was "born and raised" in Los Angeles, and that other than a visit to Las Vegas, it was the first time he had left California. Approximately seven minutes into the stop, the trooper confirmed that Gonzalez had car insurance, but he continued running computer checks and questioning him. Gonzalez explained that he did not know why the reunion was being hosted in Alabama, but he guessed it was because his family members were "big travelers."

Eight minutes and twenty-eight seconds into the stop, the trooper asked Gonzalez if he had ever been arrested. Gonzalez admitted he had been arrested twice before for crimes involving theft. When asked, he denied having large amounts of cash or anything illegal in his car. Nine minutes and

2

eighteen seconds into the stop, the trooper resumed his questioning about the family reunion.

As confirmed by the body camera footage, the trooper completed the computer searches and asked for consent to search the car nine minutes and forty-seven seconds into the stop. For about ninety seconds, Gonzalez avoided directly answering the question; he first stated he did not "have anything in there," asked if a search was necessary, and finally said he did not mind a search "if we can get on our way." The trooper called for a canine unit eleven minutes and three seconds into the stop, and the canine unit arrived approximately eight minutes later, which was nineteen minutes and thirty seconds into the stop. The dog alerted to the trunk of the car, where the trooper found 420 grams of heroin. Gonzalez was arrested and later charged with possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Gonzalez moved to suppress the evidence and requested a hearing. He argued that the trooper did not have reasonable suspicion or probable cause to extend the traffic stop to conduct a dog sniff. The Government filed a response and included as exhibits the trooper's investigative report and body cam footage. It argued that the search was supported by reasonable suspicion based on the totality of the circumstances, including: (1) Gonzalez's traveling along a known drug corridor; (2) the trooper's education, training, and experience in narcotics interdictions; (3) Gonzalez's nervous demeanor; (4) his inconsistent and inaccurate statements; and (5) his implausible explanation for the trip. The district court denied the motion without conducting a hearing.

Gonzalez pleaded guilty and entered into a conditional plea agreement that reserved his right to appeal the district court's suppression ruling, limited only to the arguments he presented in his motion. He was sentenced

to 37 months of imprisonment followed by three years of supervised release. On appeal, Gonzalez challenges the duration and scope of the traffic stop.

## II

"When reviewing a denial of a motion to suppress evidence, we review factual findings for clear error and the ultimate constitutionality of law enforcement action *de novo*." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). We must view the evidence in the light most favorable to the prevailing party below—here, the Government. *See United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (citing *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993)). And we may affirm on any basis supported by the record. *Id.* (quoting *United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999)).

## III

Gonzalez argues that the traffic stop should have concluded once the trooper verified his insurance, seven minutes after the initial stop. He avers that the trooper impermissibly extended the stop for an additional five minutes to question him about matters unrelated to the speeding infraction and to seek consent to search his car.

### A

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). The reasonableness of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), which requires

No. 23-10963

examination of (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506. Here, only the second prong of the *Terry* analysis is at issue.[1]

> As part of a traffic stop investigation,
>
> an officer may examine driver's licenses and vehicle registrations and run computer checks . . . . He may also ask about the purpose and itinerary of the occupant's trip . . . because we consider these questions to be reasonably related in scope to his investigation of the circumstances that caused the stop. . . . [A]n officer may ask questions on subjects unrelated to the circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop.

*United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010), *modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010) (internal citations omitted). This is because "the Fourth Amendment protects against detention, not questioning." *Id*. Under the second *Terry* prong, however, a traffic stop may not last longer than necessary to address the traffic violation that warranted the stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*. If an officer develops reasonable suspicion of other crimes while investigating the circumstances that caused the stop, however, he may detain the car's occupants for a

---

[1] The first prong of the *Terry* analysis is satisfied, as Gonzalez concedes that the traffic stop was justified because he was driving above the speed limit. *See United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010), *modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010) ("[B]ecause it is undisputed that [the defendant's] vehicle was speeding, . . . it is undisputed that [the trooper's] stop was justified at its inception.").

reasonable time until that reasonable suspicion is dispelled or confirmed. *Pack*, 612 F.3d at 350.

Here, the district court found that during the first nine minutes and forty-seven seconds of the traffic stop, the trooper's conduct was reasonably related to the underlying traffic violation. The body camera footage shows that during the first seven minutes of the encounter, the trooper was performing the necessary computer checks to confirm the ownership and insurance status of the vehicle. After he verified Gonzalez's insurance, the trooper continued using the patrol car's computer to review Gonzalez's criminal record, and he completed his review nine minutes and forty-seven seconds into the stop. The trooper's questioning during this time was constitutional because it did not extend the duration of the stop. *See Pack*, 612 F.3d at 350. The district court's finding was not clearly erroneous.

B

Because the trooper completed all the tasks reasonably related to the speeding violation during the first nine minutes and forty-seven seconds of the traffic stop, the stop was "unconstitutionally prolonged unless 'additional reasonable suspicion [arose]'" within that time. *United States v. Cavitt*, 550 F.3d 430, 436–37 (5th Cir. 2008) (citation omitted) (alterations in original). Reasonable suspicion "exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the . . . seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). It "must be based on more than the officer's sense that a detainee appears to have something to hide." *Cavitt*, 550 F.3d at 437. Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Any analysis of reasonable

suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *Ibarra-Sanchez*, 199 F.3d at 759.

Here, the district court found that the trooper had developed reasonable suspicion to prolong the stop based on the following: (1) the fact that Gonzalez was traveling along a known drug trafficking corridor, (2) Gonzalez's nervous demeanor, (3) the implausibility of his story regarding the family reunion in Alabama, and (4) the trooper's "training, education, and experience in narcotics interdiction, especially in the area at issue[.]"

Gonzalez argues that nervousness and evasiveness are not sufficient to find reasonable suspicion, and he denies that his story was implausible. He also asserts that the district court's reliance on the officer's training and experience and the fact that he was traveling on a known drug corridor unfairly skewed the reasonable suspicion analysis against him before the traffic stop could even begin.

In his investigative report, the trooper wrote that he believed Gonzalez was involved in criminal activity based on his nervous behavior and illogical trip details. He noted that "Gonzalez exhibited unnatural nervous behavior from the beginning of [the] traffic encounter. His hands and arms were shaking." He concluded that Gonzalez's statements about his trip were not believable because it seemed "very uncommon" that Gonzalez would travel across the United States to attend a family reunion in a state that his family is not from, and he did not know exactly where in Alabama he was going. The trooper also believed that Gonzalez had been dishonest with him. The investigative report states that once inside the patrol vehicle, Gonzalez told the trooper that it was the "first time [he'd] ever been in a police car," but the computer search confirmed that he had been arrested twice before. In the body camera footage, however, Gonzalez can be heard saying that it

was his first time being in the *front* of a police car. Nevertheless, the luxury of "hindsight does not change the Fourth Amendment analysis of [reasonable suspicion]." *See United States v. Vickers*, 540 F.3d 356, 363 (5th Cir. 2008).

The record is devoid of evidence that Gonzalez was traveling on a known drug corridor at the time of the stop. The Government's response to the suppression motion stated that it expected the trooper to testify that "[U.S. 287] is a known drug corridor used by drug traffickers transporting drugs cross-country from the West to the East."[2] It also expected the trooper to testify that "he has training, education, and experience in narcotics interdiction, especially in the area at issue." The district court did not conduct an evidentiary hearing, however. "[W]ithout any extrinsic evidence or testimony from [the trooper] as to his experience and education, we are unable to evaluate the validity, basis, or intent behind his statements." *Cavitt*, 550 F.3d at 438. Nevertheless, "we give due weight to the [trooper's] factual inferences because officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."'" *United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020) (quoting *Arvizu*, 534 U.S. at 273–74).

Based on the totality of the circumstances—Gonzalez's nervous behavior, implausible story, and the trooper's deductions therefrom—it was not unreasonable for the trooper to suspect that Gonzalez was involved in criminal activity. *See Pack*, 612 F.3d at 361–62 (holding that a defendant's extreme nervousness, conflicting stories, and presence on a known drug

---

[2] In its brief, the Government cited an unpublished case that describes the road on which Gonzalez was stopped, Highway 287, as "a known drug-trafficking corridor." *United States v. Bernal*, 638 F. App'x 379, 379 (5th Cir. 2016).

corridor, coupled with the arresting officer's experience, combine to establish reasonable suspicion). He has not shown that the district court erred.

## C

Gonzalez also argues that the total duration of the stop was unreasonable because of the time it took for the K-9 unit to arrive.

After developing reasonable suspicion of other crimes during a traffic stop, an officer is permitted to detain the car's occupants for a reasonable amount of time to dispel the suspicion. *Pack*, 612 F.3d at 350. This court has held that a ten-minute delay in deploying a canine unit after developing reasonable suspicion did not unreasonably extend a traffic stop. *Smith*, 952 F.3d at 646, 650–51.

As noted, after completing his computer checks nine minutes and forty-seven seconds into the stop, the trooper asked Gonzalez for permission to search his vehicle for contraband. Gonzalez initially avoided directly answering the question, and eleven minutes and three seconds into the stop, the trooper called for a canine unit, which arrived nineteen minutes and thirty seconds into the stop. Because the canine unit arrived approximately eight and a half minutes after the trooper had developed reasonable suspicion, the district court did not err in concluding that the delay in this case did not render the duration of the stop unreasonable.

## IV

Gonzalez argues that the district court erred in failing to hold a hearing on the motion to suppress.

A district court's decision to not conduct a suppression hearing is reviewed for abuse of discretion, subject to a harmless error analysis. *United States v. Smith*, 977 F.3d 431, 434 (5th Cir. 2020) (citing *United States v.*

*Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)). Evidentiary hearings are required "only when necessary to receive evidence on an issue of fact." *Harrelson*, 705 F.2d at 737. They "are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *Id.* "Factual allegations set forth in the defendant's motion . . . must be sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* (internal quotation marks and citation omitted). Where a defendant does not contest the Government's factual assertions or identify "disputed facts that require[] a hearing," a district court does not abuse its discretion by declining to conduct a suppression hearing. *United States v. Casper*, 536 F.3d 409, 413 (5th Cir. 2008), *vacated on other grounds*, 556 U.S. 1218 (2009).

Gonzalez has failed to show that the district court abused its discretion by declining to conduct a hearing, given the factual allegations in his motion to suppress. *See Harrelson*, 705 F.2d at 737 (focusing abuse-of-discretion inquiry on the factual allegations raised in the suppression motion and accompanying exhibits). His motion alleged that: (1) he was stopped for driving 16 miles over the speed limit, which is not an arrestable offense in Texas; (2) the trooper never began the process of writing a speeding ticket and instead questioned Gonzalez about his travel for several minutes; (3) Gonzalez was able to answer all of the trooper's questions about his travel, except for the location of the reunion; (4) when he did not consent to a search of his vehicle, the trooper called for a K-9 unit; (5) more than 24 minutes passed between the initiation of the stop and the arrival of the K-9 unit that alerted on his vehicle; and (6) more than 90 minutes elapsed between the stop and Gonzalez's arrest. In response, the Government argued there was reasonable suspicion to search Gonzalez's vehicle based on (1) his traveling on a known drug trafficking corridor; (2) the trooper's training and

experience in narcotics interdiction; (3) Gonzalez's nervousness during the stop; (4) the implausibility that he was traveling alone from California to an unknown location in Alabama to meet up with his family from California for a reunion, when none of his family had any connection to Alabama; and (5) Gonzalez's inaccurate statement that he had never been in a patrol car before, when he had been arrested previously.[3]

Gonzalez did not identify any significant conflicts between the facts he alleged in his motion to suppress and those alleged by the Government.[4] His arguments instead focused on the reasonableness of the officer's actions. To the extent he attempted to raise a factual dispute regarding whether his answers to the trooper's questions about his travel were suspicious, that dispute did not relate to the contents of the statements, which were entirely captured on the trooper's body camera footage, but to their plausibility. Because he did not point to any "disputed facts that required a hearing," Gonzalez has failed to show that the district court abused its discretion by failing to conduct a suppression hearing. *Casper*, 536 F.3d at 413.[5]

_____

[3] As noted, according to the video footage, Gonzalez stated that it was his first time *in the front seat* of a patrol car.

[4] There does appear to have been a slight discrepancy between the parties' calculations of the length of time between the initiation of the traffic stop and the arrival of the K-9 unit on the scene. Gonzalez now appears to agree with the Government that the K-9 unit "d[id] not arrive for more than 18 minutes after the initial stop."

[5] Gonzalez also argues, for the first time in this appeal, that the district court's failure to conduct an evidentiary hearing violated his Sixth Amendment confrontation right. He asserts that "the Sixth Amendment right to confront is not only a trial right but a right that applies to suppression hearings" and summarily states that, "[b]y failing to hold a hearing on the Motion to Suppress, the District Court also denied [his] Sixth Amendment right." Without more, however, he has failed to adequately brief this argument, and it is therefore forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

No. 23-10963

\*     \*     \*

We AFFIRM the judgment of the district court.